IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF GREGORY JONES, ) | No. | 04 C 3742 |
| By Vanilla Jones Simmons as Special ) | | |
| Administrator, and ANJANINE ) | | |
| WILLIAMS on behalf of DATONDRA ) | | |
| MITCHELL, her minor child, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| ) | The Honorable William J. Hibbler | |
| ) | | |
| v. ) | | |
| ) | | |
| CITY OF CHICAGO, POLICE ) | | |
| OFFICERS MARK DELBOCCIO and ) | | |
| ROBERT JACKSON *et. al.* ) | | |
| ) | | |
| ) | | |
| Defendants. ) | | |

MEMORANDUM OPINION AND ORDER

On May 19, 2004, 8-year-old Gregory Jones and 11-year-old Datondra Mitchell were struck by an unmarked police car. Both children were gravely injured and Jones died the next day. The plaintiffs—the parents of the children—allege the officers' reckless driving deprived the victims of their substantive due process rights. In response, the officers move for summary judgment and assert vehicular *accidents* cannot support a finding of constitutional liability. For the reasons set forth below, the officers' motion for summary judgment is GRANTED.

I. **Factual Background**

The following facts are taken from the litigants' Local Rule 56 statements.

1

On May 19, 2004, at approximately 3:30 p.m., Chicago Police Officers Mark Delboccio and Robert Jackson were driving an unmarked police car on the West Side of Chicago. (Def. 56.1(a) St. ¶ 1-4.) The officers were engaged in "proactive enforcement," which entails driving around high-crime areas to deter criminal activity. (Def. 56.1(a) St. ¶ 2.) Officer Delboccio drove the vehicle at all times. (Def. 56.1(a) St. ¶ 4.) Earlier in the afternoon, the officers arrested Jeffrey Berkley for solicitation and placed him in the back of their squad car. (Def. 56.1(a) St. ¶¶ 8-10.) After the arrest, the officers proceeded northbound on Pulaski Road to take Berkeley to the police station for processing and booking. (Def. 56.1(a) St. ¶ 13.)

The officers drove to the intersection of Pulaski and Grand Avenue, turned left into the westbound lane of Grand and promptly encountered heavy traffic. (Def. 56.1(a) St. ¶¶ 19-20.) The traffic congestion made it impossible to pass any cars while remaining on the westbound side of Grand. (Def. 56.1(a) St. ¶ 21.) The officers drove for two blocks before maneuvering their car to the yellow line that divided the east and westbound lanes of Grand. (Def. 56.1(a) St. ¶ 45.) The officers then proceeded down "the wrong way" of Grand, *i.e.*, driving westbound in the in the eastbound lane, to move past the traffic jam.[1] (Pl. 56.1(b)(3) St. ¶ 13.) A witness testified the officers were accelerating as they drove in the eastbound lane. (Pl. 56.1(b)(3) St. ¶ 20.)

---

[1] Here, the parties' factual accounts widely diverge. The officers contend they saw a man in a black car aim a gun at a bystander and drive away. (Def. 56.1(a) St. ¶¶ 34-38.) According to the officers, they drove west in the eastbound lane of Grand to catch up with the suspect. In response, the plaintiffs argue the "black gun car" never existed, and the officers were driving down the wrong way of the street solely because they were too impatient to wait in traffic. The factual record demonstrates ample support for the plaintiffs' position. First, the officers admit they never called in a description of the black gun car to headquarters. (Def. 56.1(a) St. ¶ 55.) This admission is significant given the alleged crime—aiming a gun at bystander—is quite serious. Secondly, Jeffrey Berkley—the arrestee in the back seat of the squad car— denies hearing the officers discuss an attempted shooting, and asserts he never saw the black gun car. (Pl. Ex. G, Berkley Dep. At 11-12). Moreover, civilian witnesses testified the officers' lights and sirens were not activated, which supports the theory that the officers were not pursuing an armed suspect. (Pl. Ex. A,

2

Around the same time, 8-year old Gregory Jones and 11-year old Datondra Mitchell were walking home from a store on the West Side. The children walked to the middle of Grand Avenue and stood on the yellow line that separates the eastbound from the westbound lane. (Def. 56.1(a) St. ¶ 92.) The children were not at a cross walk, but were standing between cars stopped in traffic. (Def. 56.1(a) St. ¶ 93.) In an awful tragedy, the officers drove their car into the children.[2] (Def. 56.1(a) St. ¶ 92.) Jones was struck by the passenger-side front headlight of the vehicle, propelled onto the hood and then thrown forward. (Pl. 56.1(b)(3) St. ¶ 6.) Jones died the next day from his injuries. (Pl. 56.1(b)(3) St. ¶ 8.) Mitchell was struck by the vehicle's passenger-side mirror, suffered serious injuries but survived the impact. (Pl. 56.1(b)(3) St. ¶ 8.)

In September 2004, the parents of the children sued the City of Chicago and officers Mark Delboccio and Robert Jackson alleging the defendants deprived the children of their substantive due process rights and violated various state law claims. After engaging in substantial written and oral discovery, the defendant police officers moved for summary judgment on February 11, 2008.

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate

---

Corona Dep. At 11-12; Pl. Ex. B, Lash Dep. At 19; Pl. Group Ex. X, Ortiz Dep. At 7-9; Ortiz Affidavit.). These same witnesses also don't recall seeing a black car in the area, or a man aiming a gun at a bystander. The officers concede they were not engaged in a high speed chase. (Def. 56.1(a) St. ¶ 56.) The "black gun car" was never found, and no arrest was ever made regarding the incident. In the Court's view, the officers have a serious credibility problem with respect to the black gun car. In any event, there is insufficient evidence to show the officers *intentionally* drove into the children. Thus, whether the officers lied about their reason for driving in the wrong lane has no bearing on the operative question of the case: whether a vehicular *accident* can form the basis of constitutional liability.

[2] The officers claim the children were attempting to cross the street, but the plaintiffs claim the children were simply standing on the line.

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Celotex*, 477 U.S. 324. Once the moving party has met the initial burden, the nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The nonmoving party must produce specific facts showing there is a genuine issue of material fact, and the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. 255.

### III. Analysis

A.  *Due Process*

The *Fourteenth Amendment* prohibits states from depriving any person of life, liberty or property without due process of law; and 42 U.S.C. § 1983 allows individuals to enforce constitutional guarantees against state actors. The specific requirements of due process are somewhat nebulous, but the essence is "protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (quoting *Wolf v. McDonnell*, 418 U.S. 539, 558, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974)). Thus, due process requires some type of procedural protections—for example adjudication by an impartial decision maker—to be

in place before the state deprives an individual of a fundamental right. *See Matthews v. Eldridge*, 424 U.S. 319, 331; 96 S. Ct. 893; 47 L. Ed. 2d 18 (1976). The due process clause, however, does not grant a fixed bundle of procedural rights; the "process that is due in any given case varies according to the factual circumstances of the case and the nature of the interests involved." *Benson v. Scott*, 734 F.2d 1181, 1185 (7th Cir. 1984).

The due process clause extends beyond ensuring procedural safeguards; the substantive component of the clause protects individual rights from oppressive government intrusion. *Brown v. Brienen*, 722 F.2d 360, 366 (7th Cir. 1983)("Substantive due process is a shorthand for the fact that the Supreme Court has interpreted the due process clause of the *Fourteenth Amendment* to confer certain substantive rights based mainly on the Bill of Rights."); *Spiegel v. Rabinovitz*, 121 F.3d 251, 254-57 (7th Cir. 1997) (noting the substantive component of the due process clause protects "matters relating to marriage, family, procreation, and the right to bodily integrity."); *Miller v. Fairman*, 872 F. Supp. 498, 502 (N.D. Ill. 1994) (explaining that substantive due process "forbids certain kinds of state actions no matter the fairness of the procedures used to implement them."). At bottom, the substantive due process clause protects personal activities that are so deeply rooted in our nation's history, that they are considered "fundamental" to our concept of liberty. *Cf. Griswold v. Connecticut*, 381 U.S. 479, 485-486 85 S. Ct. 1678; 14 L. Ed. 2d 510 (1965) ("Would we allow the police to search the sacred precincts of marital bedrooms for telltale signs of the use of contraceptives? The very idea is repulsive to the notions of privacy surrounding the marriage relationship.").

B.   *County of Sacramento v. Lewis*

The defendants were driving west in the eastbound lane of Grand Avenue and struck two young children, seriously injuring Datondra Mitchell and killing Gregory Jones. The plaintiffs claim the vehicular accident deprived their children of their *Fourteenth Amendment* right to due process. In cases such as this, the starting point is the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 846 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). In *Lewis*, the police ordered a motorcyclist to pull over. The motorcyclist refused, and a high-speed chase ensued. *Id.* at 837. The chase ended when the motorcycle tipped over, and a police car struck and killed the passenger who had landed in the street. *Id.* The victim's parents alleged the police deprived their son of his *Fourteenth Amendment* substantive due process right to life. *Id.* The Supreme Court framed the issue as: "whether a police officer violates the *Fourteenth Amendment's* guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high speed automobile chase ..." *Id.* at 836.

The threshold question of any substantive due process challenge is whether the behavior of a state actor "is so egregious, so outrageous that it may fairly be said to shock the contemporary conscience." *Id.* at 847. The Court began by identifying the varying degrees of culpability applicable to vehicular collisions. First, the Court rejected the assertion that harm caused by a state actor's negligence shocks the conscience: "The Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849. The Court then reviewed conduct at the opposite end of the fault spectrum *i.e.*, "conduct intended to injure" and declared this level of culpability "would most probably support a substantive due process claim." *Id.* Next, the Court suggested

6

culpability falling in between these poles—"more than negligence but less than intentional conduct, such as recklessness"—was "a matter for closer calls." *Id.* For example, in some cases a government official's "deliberate indifference" could be tantamount to a due process deprivation. *Id.* Successful challenges under the "deliberate indifference" standard, however, were mainly in the custodial prison context:

> As the very term deliberate indifference implies, the standard is sensibly employed only when actual deliberation is practical, and in the custodial situation of a prison, forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare.

*Id.* at 851 (internal citations omitted).

Ultimately, the *Lewis* Court held the police officers' conduct did not deprive the plaintiff of substantive due process: "high speed chases with no intent to harm ... do not give rise to liability under the *Fourteenth Amendment.*" *Id.* at 854. The key variable was that the officers were involved a high-speed chase where decisions are made in "haste, under pressure and frequently without the luxury of a second chance." *Id.* at 853. (quoting *Whitley v. Albers*, 475 U.S. 312, 320, 106 S. Ct. 1078; 89 L. Ed. 2d 251 (1986). The officers, therefore, were not acting with deliberate indifference because there was no time for reflection or deliberation. Nevertheless, the Court—according to Justice Scalia—left open whether a vehicular collision caused by a state actor's recklessness could support a finding of constitutional liability:

> We have expressly left open whether, in a context in which the individual has not been deprived of the ability to care for himself ... something less than intentional conduct, such as recklessness or gross negligence can ever constitute a deprivation under the Due Process Clause.

*Id.* at 863 (Scalia, J., concurring). This dicta is the essence of plaintiffs' argument.

C.   *Hill v. Shobe*

7

Two years prior to *Lewis*, the Seventh Circuit considered whether a police officer's reckless driving supports a *Fourteenth Amendment* claim. In *Hill v. Shobe,* the officer—who was not chasing a suspect or responding to an emergency call—was driving over the speed limit, and failed to turn on his lights or sirens even though it was after midnight. 93 F. 3d 418, 419 (7th Cir. 1996). Subsequently, the officer ran a red light, and struck and killed Robert Hill. *Id.* Hill's estate sued the police alleging Hill was deprived of his substantive due process right to life under the *Fourteenth Amendment. Id.*

As a threshold matter, the court noted "not every legally cognizable injury inflicted by a state employee acting under color of law violates the *Fourteenth Amendment.*" *Id.* To prevail, the plaintiff must demonstrate the police officer had "actual knowledge of impending harm which he consciously refused to prevent." *Id.* at 421. A plaintiff has to do more than showing the officer "like any reasonable person, knew that driving at high speed at night without lights could have potentially fatal consequences." *Id.* In other words, the officer must have sufficient knowledge of the danger so the court can "infer he *intended* to inflict the injury." *Id.* The Court held:

> Motor vehicle accidents caused by public officials or employees do not rise to the threshold of a constitutional violation actionable under § 1983 absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it. It is insufficient to show that a public official acted in the face of a recognizable but generic risk to the public.

*Id.* The key word in *Hill*, was "accident." If the vehicular collision was accidental—even where it was caused by recklessness—there is no constitutional liability. The plaintiff must show the officer knew the victim was in harm's way but did not care whether the victim "lives or dies." *Id.* (quoting *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988).

8

D.   *Application to Plaintiffs*

The police officers contend they were unaware of the children's presence until the instant prior to the collision. The individual in the backseat of the police car—Jeffrey Berkley—testified he saw the children for approximately "five seconds" before the collision. (Pl. Ex. 8 Berkley Dep. at 64.) Berkley further testified the children were not stationary, but were trying to cross the street. *Id.* The plaintiffs acknowledge the children were not at a crosswalk but were between cars stopped in traffic. The record simply does not demonstrate the police *intended* to run over the victims.

The death of Gregory Jones and the injuries suffered by Datondra Mitchell are terribly tragic. But, the collision happened in the blink of an eye and the incident is most accurately characterized as a vehicular accident.[3] The Court in no way condones the officers' behavior. Nonetheless, the question before the Court is whether a vehicular accident caused by recklessness can form the basis of constitutional liability under the substantive due process clause. Under the Court's interpretation of *Hill v. Shobe*, the answer is no. There was no time for considered deliberation, and there is insufficient evidence to show the officers intended to hit the victims.

E.   *Continued Validity of Hill v. Shobe*

The plaintiffs'–well written—response brief states "a fair reading of [*Hill v. Shobe*] is that the intent to cause harm standard must be applied to every injury caused by a police car no matter what the context." (Pl. Resp. Br. at 13). The plaintiffs argue in light of the Supreme Court's decision in *Lewis*, the "*Hill v. Shobe*... application of the intent to cause harm [standard]... is no longer appropriate." As discussed *supra*, the

---

[3] An accident caused in great part by the officers' decision to ignore the traffic laws in a non-emergency context.

9

Supreme Court seems to have left open the question of whether a vehicular accident caused by a state actor's recklessness supports a finding of constitutional liability. The plaintiffs—candidly and correctly—point out that *Hill* forecloses this avenue.

*Hill* was decided in 1996; *Lewis* was decided in 1998. *Hill*, however, is still the governing law and has not been overruled. As recently as 2005, the Seventh Circuit relied on *Hill* to declare that a vehicular accident caused by a correctional officer did not support a substantive due process claim. *Alexander v. Perrenoud*, 134 Fed. Appx. 938, 939 (7th Cir. 2005) (holding that officer's *negligence* in backing into another car did not violate the substantive due process clause). Accordingly, *Hill* remains in full force and it is not for the Court to decide whether *Hill* includes the exceptions urged by the plaintiffs. Perhaps on appeal the Seventh Circuit will address whether a state actor's conduct can ever be *so reckless*—for example, speeding in a non-emergency situation, without lights or sirens, down the wrong side of a street in an area allegedly close to a school zone—that the state actor's conduct—despite not intending to kill the victim—shocks the conscience and violates the substantive due process clause.

### IV. Conclusion

The Seventh Circuit has held that in the context of vehicular collisions, the plaintiffs must present evidence that the police intended to injure the victims in order to sustain a claim under the *Fourteenth Amendment*. The factual record demonstrates the collision occurred in the blink of an eye. Moreover, while there is ample evidence to find that the police were driving recklessly, there is insufficient evidence to find the police intended to kill Gregory Jones and injure Datondra Mitchell. Existing Seventh Circuit precedent mandates that the defendants' motion for summary judgment be GRANTED.

IT IS SO ORDERED.

　9/2/08
―――――――
Dated

*[signature: Wm. J. Hibbler]*
The Honorable William J. Hibbler
United States District Court